IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WILLIS ALFRED BRAILEY,

      Petitioner,

v.                                                Civil Action No. **3:12CV167**

G.M. HINKLE,

      Respondent.

## MEMORANDUM OPINION

Willis Alfred Brailey, a Virginia prisoner proceeding *pro se*, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254.[1] Brailey challenges his convictions on eight counts of preparing false state tax returns in the Circuit Court of the County of Henrico ("Circuit Court"). Brailey demands relief upon the following grounds:[2]

---

[1] Because Brailey failed to paginate his § 2254 Petition and its attachments (ECF No. 1) and his Opposition to the Motion to Dismiss (ECF No. 8), the Court employs the PageID# assigned to these documents by the Court's CM/ECF docketing system. The Court corrects the capitalization in the quotations to Brailey's submissions.

[2] Brailey included four numbered grounds for relief and attached pages labeled Claims A–E. Brailey labeled Claim B as an ineffective assistance of counsel claim based on a "conflict of interest." (§ 2254 Pet. PageID# 6.) Nevertheless, the supporting facts, as restated below, make clear his second claim simply rehashes Claim A, wherein he asserted that the Circuit Court denied him his counsel of choice.

      Counsel for the defendant put on several motions requesting to be removed from the case; the first was March 25, 2008, David Hicks, Attorney motioned to withdraw irreconcilable differences that I do not think my continued representation of him would be to his benefit your honor.
      The right to be assisted by *counsel of choice is wrongly denied* as a violation of the Sixth Amendment as established. Deprivation of the rights is "complete" when the defendant is erroneously *prevented from being represented by the lawyer of their choice*, regardless of the quality of the representation he received.

(*Id.* at PageID# 48 (emphasis added).)

| | |
|---|---|
| Claims A & B | The Circuit Court erred by denying Brailey his counsel of choice. |
| Claim C | Counsel rendered ineffective assistance because: counsel failed to emphasize that the taxpayer, rather than the preparer of the tax return, must ensure the accuracy of the information on the tax return; and counsel failed to introduce the federal tax returns of the individuals for whom Brailey allegedly filed false state tax returns. |
| Claim D | Counsel failed to call Bernell Williams Jones and Betty Archer as expert witnesses. |
| Claim E | The prosecution failed to adduce sufficient evidence to convict Brailey. |

Respondent has moved to dismiss.[3]  Respondent acknowledges that Brailey presented Claims A, B, D and E to the Supreme Court of Virginia and moves to dismiss those claims for lack of merit. Respondent asserts that Brailey failed to present Claim C either on direct appeal or state habeas, thus Brailey failed to exhaust Claim C. Respondent further asserts that Brailey procedurally defaulted Claim C because a variety of state procedural rules would now preclude the Virginia Supreme Court from considering that claim. For the reasons set forth below, the Corrected Motion to Dismiss will be granted.

## I. EXHAUSTION AND PROCEDURAL DEFAULT

State exhaustion "'is rooted in considerations of federal-state comity,'" and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 & n. 10 (1973)). The purpose of the exhaustion requirement is "to give the State an initial opportunity to pass upon and correct

---

[3] Respondent filed a Motion to Dismiss that named a petitioner other than Brailey in the body of the Motion to Dismiss. (ECF No. 4.) Brailey filed a motion enlightening the Court and Respondent to this error. (ECF No. 9.) Thereafter, Respondent filed a Corrected Motion to Dismiss. (ECF No. 11.)  Accordingly, the original Motion to Dismiss (Docket No. 4) and Brailey's motion identifying the error in that motion (ECF No. 9) will be DENIED AS MOOT.

alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "'opportunity'" to address the constitutional claims advanced on federal habeas. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)) (additional internal quotation marks omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (quoting *Duncan*, 513 U.S. at 365–66). Fair presentation demands that a petitioner must present "'both the operative facts and the controlling legal principles' associated with each claim" to the state courts. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994, 995 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a

3

state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n.1).[4] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

Respondent correctly notes that Brailey failed to raise Claim C on direct appeal or in his state habeas proceedings. Thus, Claim C is unexhausted. If Brailey now attempted to present this claim to the Supreme Court of Virginia, that court would find the claim barred by section 8.01–654(B)(2) of the Virginia Code.[5] Section 8.01–654(B)(2) of the Virginia Code generally constitutes an adequate and independent procedural bar when so applied. *See George v. Angelone*, 100 F.3d 353, 363–64 (4th Cir. 1996).

---

[4] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

[5] "No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." Va. Code Ann. 8.01–654(B)(2) (West 2012).

4

Nevertheless, resolution of Claim C implicates the Supreme Court's recent decision in

*Martinez v. Ryan*, 132 S. Ct. 1309 (2012). In *Martinez*, the Supreme Court held:

> Where, under state law, claims of ineffective assistance of trial counsel
> must be raised in an initial-review collateral proceeding, a procedural default will
> not bar a federal habeas court from hearing a substantial claim of ineffective
> assistance at trial if, in the initial-review collateral proceeding, there was no
> counsel or counsel in that proceeding was ineffective.

*Id.* at 1320. Thus, the Supreme Court established a three-part inquiry for determining whether a

petitioner can establish cause for the default of an ineffective assistance claim. *See Ramsey v.*

*Runion*, No. 2:11cv396, 2012 WL 3883378, at *4 (E.D. Va. Sept. 5, 2012) (applying three-step

analysis). First, the state imposing the conviction must require a petitioner to raise a claim of

ineffective assistance of trial counsel in a collateral proceeding rather than on direct review.

*Martinez*, 132 S. Ct. at 1318. Next, the state must have failed to appoint counsel in the "initial-

review collateral proceeding," or appointed counsel in the collateral proceeding rendered

ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.*   Finally, to

overcome the default, the underlying ineffective assistance claim must possess "some merit." *Id.*

(citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)). Here, Brailey satisfies the first two prongs of

the inquiry, but fails to satisfy the final prong. As explained *infra* Part V.A, Brailey's underlying

ineffective assistance claim lacks any merit.[6]

---

[6] In Virginia, a petitioner must raise claims of ineffective assistance of counsel in a
habeas corpus proceeding, not on direct appeal. *Blevins v. Commonwealth*, 590 S.E.2d 365, 368
n.* (Va. 2004) (citing *Lenz v. Commonwealth*, 544 S.E.2d 299, 304 (Va. 2001)). Moreover, in
his state habeas proceedings, Brailey had no assistance of counsel as he filed *pro se*. Thus, the
Court turns to the third prong of the inquiry.

## II. APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS REVEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).[7]

### III. SUFFICIENCY OF THE EVIDENCE

A federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The relevant question in conducting such a

---

[7] In light of the foregoing statutory structure, the Virginia courts' disposition of Brailey's claims figures prominently in this Court's opinion.

review is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318.

A jury in the Circuit Court found Brailey guilty of eight counts of preparing false tax returns in violation of section 58.1–348.1 of the Virginia Code. That statute provides:

> Any income tax return preparer, as defined in § 58.1–302, who knowingly and willfully aids or assists in, counsels or advises the preparation or presentation of a return, affidavit, claim or other document required by this chapter that he knows is fraudulent or false as to any material matter, is guilty of a Class 6 felony.

Va. Code Ann. § 58.1–348.1 (West 2012). The Court of Appeals of Virginia aptly summarized the evidence of Brailey's guilt as follows:

> [F]rom June 1989 to November 2000, appellant worked for the Virginia Department of Taxation (Department) as a tax collections representative. Appellant's job was to ensure compliance and the proper resolution of delinquent tax liabilities, and in doing so, to review state tax returns.
> After leaving his job with the Department, appellant began preparing tax returns for individuals. In 2005 and 2006, appellant prepared federal and state tax returns for several individuals, including Keith W. (Keith), Crystal W. (Crystal), Terrence W. (Terrence), Devon J. (Devon), Keith B. (Keith B.), Kareem M. (Kareem), and James K. (James) [(collectively the "Taxpayers")].
> In early 2006, Keith contacted appellant about preparing Keith's 2005 tax returns. Appellant agreed to prepare the returns in exchange for $200 in cash. Keith told appellant that he was married, that he was a truck driver, and that he made charitable contributions in the amount of $500. He provided appellant with his W–2 form, but did not give appellant any other information. Appellant also spoke to Crystal, Keith's wife. She told appellant that she was married but wanted to file her taxes as head of household. Appellant prepared the returns. He filed Keith's and Crystal's state tax returns separately, indicating on each return that the individual was single. Keith's return included itemized deductions for mileage and charitable contributions. Crystal's deductions were not itemized.

7

The Department determined that both returns were improperly prepared because married couples may not file under single status and one spouse may not itemize deductions, while the other does not. The Department disallowed Keith's mileage deduction and a portion of his charitable contributions. After proper calculation, the Department determined that Keith owed an additional $1,235. Crystal owed an additional $159.

In March 2006, appellant prepared Terrence's 2005 tax returns in exchange for $350 in cash. Appellant asked for Terrence's birth date, his wife's birth date, and the make, model, and year of his car. Terrence gave him this information, along with his W–2 form, his mortgage forms, and receipts from church donations. Terrence supplied no other information, and appellant prepared the returns. Terrence's state tax return included itemized deductions of $49,389, including business operating expenses, business losses, and mileage deductions, none of which Terrence supplied to appellant. The Department disallowed a substantial portion of Terrence's deductions and determined that he owed an additional $928.

In February 2006 and 2007, appellant prepared Devon's tax returns in exchange for $325 in cash. Devon told appellant that he drove his company truck approximately 2000–2500 miles per week. Devon also gave appellant his W–2 form, but provided appellant with no other information. Devon waited while appellant prepared his return. Devon's state return included approximately $30,000 in deductions, including $18,000 in mileage deductions. Devon's return included starting and ending mileage numbers for his company truck, which Devon never supplied to appellant and which were incorrect. The Department disallowed Devon's mileage deductions and determined that he owed an additional $1,382 for 2005 and $1,392 for 2006.

In February 2006, appellant prepared Keith B.'s 2005 tax returns for $350 in cash. Keith B. gave appellant his W–2 form and his statement of mortgage interest, but he did not provide appellant with any other information. Keith B. waited while appellant prepared his return. Keith B.'s 2005 state return showed $17,368 in itemized deductions, including business mileage. The Department disallowed most of Keith B.'s deductions, including those for business mileage, and determined that his adjusted gross income was $35,087, rather than $28,213, as indicated on the return. Accordingly, the Department determined Keith B.'s income should have been calculated in a higher tax bracket, resulting in a lower refund amount.

In early 2006, appellant prepared Kareem's 2005 returns. Appellant told Kareem that he could "write off" lunches and other business expenses because Kareem was a salesman. Although Kareem did not supply appellant with any information other than his W–2 form, Kareem's state return included $16,000 in deductions, including business mileage. The Department disallowed Kareem's deductions and determined that he owed an additional $768.

In February 2006, appellant prepared James's 2005 returns for $300 in cash. James provided appellant with his W–2 form, a lottery receipt showing

$2,600 in winnings, and a mileage certificate showing 90,000 miles driven on James's company truck in 2005. James's state return included $38,985 in unreimbursed business expenses, including mileage deductions. The Department disallowed James's deductions and determined that he owed an additional $1,627.

In each case, appellant filled out all the information on the returns, but had the individual sign the return as "preparer." In some cases, the individuals admitted that they were shocked or surprised by the amount of their return or that they didn't know where the numbers on the returns came from. However, each individual signed the return. A search of appellant's home computer revealed numerous copies of tax returns, including the returns for most of the above-named individuals.

. . . .

. . . Keith, Crystal, Terrence, Devon, Keith B., Kareem, and James. . . . testified that they spoke with appellant about the preparation of the returns, they paid appellant personally, and appellant presented completed returns to them. Devon and Keith B. testified that they waited at appellant's home while he prepared their returns.

*Brailey v. Commonwealth*, 686 S.E.2d 546, 548–50 (Va. Ct. App. 2009).

Brailey initially asserts that insufficient evidence exists that he prepared the returns because the Taxpayers indicated on their respective returns that they had prepared the returns.

The Court of Appeals of Virginia rejected that argument and ruled:[8]

In providing . . . expansive language in Code § 58.1–348.1, it was clearly the legislature's intention to criminalize all conduct related to the preparation of false tax returns, not simply the actions of the person preparing the return. Thus, we find the Commonwealth need not prove that appellant prepared the returns at issue; rather, the Commonwealth need only prove that appellant aided, assisted, counseled, or advised in the preparation of the returns. From the record, it is clear the evidence was sufficient to support such a finding.

Appellant spoke with each individual about his or her income and possible deductions. Appellant collected information relevant to the preparation of the returns. He asked for and accepted payment in cash from each individual. He delivered the prepared returns to each individual. Both Devon and Keith B. waited at appellant's home while the return was prepared. Finally, appellant's home computer contained copies of many of the returns. From this evidence, a

---

[8] In his § 2254 Petition, Brailey presented only limited argument in support of his challenge to the sufficiency of the evidence. Brailey, however, also attached a copy of the Petition for Appeal he filed with the Supreme Court of Virginia to his § 2254 Petition. Accordingly, the Court deems Brailey to press the same arguments raised in the Petition for Appeal with respect to his challenge to the sufficiency of the evidence.

reasonable fact finder could certainly conclude, beyond a reasonable doubt, that appellant knowingly and willfully aided, assisted, counseled, or advised in the preparation of the eight returns.

*Id.* at 552.

Next, Brailey argues insufficient evidence exists to show that he knew the falsity of the information contained in the returns at issue. To the contrary, abundant evidence supported this element as demonstrated by following analysis by the Court of Appeals of Virginia:

> Each of the Commonwealth's witnesses testified that he or she gave appellant very specific information and that other information was included on the return that the individual did not provide. Both Keith's and Crystal's returns were filed using the single filing status, despite appellant's conversation with both of them discussing the fact that the two were married. Further, appellant used exaggerated, if not completely made up, business expenses and mileage deductions on every return. Keith's return included mileage deductions that Keith said he did not provide. Devon's return contained $18,000 in mileage deductions, including starting and ending mileage for the year. Devon never supplied those numbers to appellant, and Devon testified that the numbers included on the return were, in fact, incorrect. Terrence's return included business operating expenses, business losses, and mileage deductions, none of which Terrence supplied to appellant. Keith B.'s return contained over $17,000 in itemized deductions, including business mileage deductions. Again, Keith B. testified that he never supplied appellant with those numbers. Kareem gave appellant only his W–2 form, yet his return contained $16,000 in business deductions, including mileage deductions. Finally, James's return contained almost $39,000 worth of unreimbursed business expenses, including mileage deductions. Although James gave appellant a mileage certificate showing 90,000 miles driven that year, James also gave appellant his W–2 form, indicating the vehicle belonged to his company. Thus, James was not entitled to mileage deductions.
>
> . . . .
>
> Based on the substantial similarities among the errors on all the returns and the witnesses' testimony that they did not give appellant information about mileage or other business deductions, a reasonable fact finder could determine that appellant simply fabricated the numbers on the returns.
>
> . . . .
>
> Finally, and especially significant in this case, is the fact that appellant worked for the Department for eleven years. As a tax collections representative, his job was to review state tax returns and ensure both businesses and individuals complied with the requisite tax laws. In this capacity, a fact finder would be

10

> justified in finding it incredible that appellant did not know the proper method of
> preparing tax returns.

*Id.* at 553–54.[9] Because an abundance of evidence supported Brailey's guilt with respect to all

the charges, Claim E will be dismissed.

### IV. ALLEGED DENIAL OF COUNSEL OF CHOICE

In Claims A and B, Brailey asserts that, by denying his motion for a continuance on the

day of trial, the Circuit Court denied his right to counsel of choice under the Sixth Amendment.[10]

The Sixth Amendment right to counsel includes "the right of a defendant who does not require

appointed counsel to choose who will represent him." *United States v. Gonzalez–Lopez*, 548

U.S. 140, 144 (2006) (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988)). If a court

wrongly denies a defendant's right to counsel of choice, a Sixth Amendment violation has

occurred, and courts need not conduct an ineffective assistance of counsel inquiry during habeas

proceedings. *Id.* at 148. Further, the Supreme Court of the United States has held that the

"erroneous deprivation of the right to counsel of choice . . . 'qualifies as structural error.'" *Id.* at

150 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 282 (1993)) (additional internal quotation

marks omitted). However, the right to counsel of choice is not absolute and "'is circumscribed in

several important respects.'" *Id.* at 144 (quoting *Wheat*, 486 U.S. at 159). The Supreme Court

of the United States has "recognized a trial court's wide latitude in balancing the right to counsel

of choice against the needs of fairness, and against the demands of its calendar." *Id.* at 152

(internal citations omitted).

---

[9] Brailey notes the individuals signed the returns he prepared without pointing out any
mistakes. "The fact that the individuals may have known their returns were false does not
exculpate [Brailey] under Code § 58.1–348.1." *Brailey*, 686 S.E.2d at 553–54.

[10] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the
assistance of Counsel for his defence." U.S. Const. amend. VI.

Thus, despite the fact that constitutional rights may be implicated, trial courts are accorded wide discretion in determining whether or not to grant continuances. *Sampley v. Att'y Gen. of N.C.*, 786 F.2d 610, 613 (4th Cir. 1986). "Indeed, the constitutional right is probably best stated as a limit on trial court discretion: that discretion only exceeds its constitutional bounds when it is exercised to deny a continuance on the basis of an 'unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay.'" *Id.* (quoting *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983)) (additional internal quotation marks omitted). In determining whether a trial court abused its discretion in denying a continuance, reviewing courts must look to the circumstances and facts of each case, particularly the reasons presented to the trial court at the time the request is denied. *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). "Obviously a defendant has no constitutional right to dictate the time, if ever, at which he is willing to be tried by simply . . . objecting that counsel then retained or assigned is not presently 'counsel of his choice.'" *Sampley*, 786 F.2d at 613 (internal citations omitted).

The Virginia Court of Appeals made the following pertinent findings with respect to this claim:

> In November 2007, appellant was indicted on thirteen counts of preparing false tax returns, in violation of Code § 58.1–348.1. At the start of trial, the Commonwealth moved to *nolle prosequi* one count. Appellant then requested a continuance to obtain new counsel. Both appellant and his trial counsel agreed there were problems "beyond the normal realm of navigation" and that the two did "not see eye to eye." Defense counsel requested an *in camera* discussion to avoid alerting the prosecutor to the reasons for new counsel. This request was accommodated, and counsel met with the trial judge outside the presence of the prosecutor and off the record, and explained the reasons for appellant's motion. After the *in camera* discussion, the trial court denied appellant's motion, noting for the record, that the Commonwealth had fourteen witnesses present, some from out of town, the case was previously continued on appellant's motion, and defense counsel said he was prepared to go forward. There was nothing said on the

12

record, by either the trial judge or counsel for appellant, regarding the circumstances associated with the *in camera* discussion.

*Brailey*, 686 S.E.2d at 549.

> [A]ppellant, in this case, waited until the day of trial to request a continuance for new counsel.... [A]ppellant must have presented exceptional circumstances to justify his last minute request. Appellant presented no "exceptional circumstances," or for that matter, any reason whatsoever for his request. The record is silent on the subject, other than the general representation by appellant that he and his counsel were having problems "beyond the realm of normal navigation" and did "not see eye to eye." Whatever specific reasons appellant had to justify the request for new counsel were discussed outside the presence of the prosecutor, and no reasons were proffered for the record. The Court "ha[s] many times pointed out that on appeal . . . the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of." *Justis v. Young*, 202 Va. 631, 632, 119 S.E.2d 255, 256–57 (1961). Thus, it is appellant's burden to produce a record that includes the reasons presented to the trial court that justified his request for new counsel. Having failed to do so, this Court cannot speculate as to what appellant might have argued before the trial court and can only view the facts provided in the record.
>
> The trial court, privy to appellant's reasons for the motion, addressed the state's countervailing interest to proceed expeditiously. In denying appellant's motion, the trial court noted that a continuance was previously granted at appellant's request, the Commonwealth had fourteen witnesses present on the day of trial, and appellant's counsel stated that he was prepared to go forward. Given these circumstances, we cannot say that appellant presented exceptional circumstances to overcome the state's countervailing interest, justifying a last minute continuance request to obtain new counsel. Accordingly, the trial court did not abuse its discretion in denying appellant's motion.

*Id.* at 551 (third alteration in original) (omission in original).

Brailey waited to raise his problems with counsel until the morning of trial.[11] This Court cannot conclude that the Circuit Court's denial of Brailey's second motion for a continuance, made on the day of trial, abridged Brailey's Sixth Amendment right to counsel of choice. *See*

---

[11] At a March 25, 2008 hearing, defense counsel moved to withdraw. (Pet'r's Opp'n Mot. Dismiss (ECF No. 8) PageID# 195.) After Brailey assured the Circuit Court that he did not "have any problem" with counsel continuing to represent him, the Circuit Court denied the motion. (*Id.* at PageID# 196.)

*United States v. Corporan-Cuevas*, 35 F.3d 953, 956 (4th Cir. 1994) (observing that a motion to continue in order to substitute counsel "made on the first day of trial ... would clearly be untimely under all but the most exigent circumstances").[12]   Although Brailey stated that he did not "have any confidence in [his] attorney" (July 9, 2008 Tr. 8), he fails to direct this Court to specific evidence that suggests "a breakdown of attorney-client communication to the extent that defense counsel was unable to conduct an adequate defense." *Turner v. Watson*, No. 3:11cv757, 2012 WL 3985627, at *9 (E.D. Va. Sept. 11, 2012) (citing *United States v. Hagen*, 468 F. App'x 373, 385 (4th Cir. 2012); *United States v. Johnson*, 114 F.3d 435, 443 (4th Cir. 1997)).   Instead, the record reflects that counsel was "prepared to go forward" (July 9, 2008 Tr. 11) and thereafter competently, though unsuccessfully, challenged the Commonwealth's case against his client.[13] Given the foregoing record, Brailey fails to demonstrate the Virginia courts acted incorrectly or unreasonably in rejecting claims based on his Sixth Amendment right to counsel of choice. *See* 28 U.S.C. § 2254(d).   Accordingly, Claims A and B will be dismissed.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced

---

[12] On the morning of trial, the Commonwealth had fourteen witnesses present, some of whom were "from out of town." *Brailey*, 686 S.E.2d at 549.   Analysis of Brailey's right to counsel of choice must include consideration of the state's "countervailing ... interest in proceeding with prosecutions on an orderly and expeditious basis, taking into account the practical difficulties of 'assembling the witnesses, lawyers, and jurors at the same place at the same time.'" *Sampley*, 786 F.2d at 613 (quoting *Morris*, 461 U.S. at 11).   The presence of numerous witnesses, many of whom were private citizens, some of whom were from out of town, belies the assertion that the Circuit Court's denial of the continuance constituted "an 'unreasoning and arbitrary insistence upon expeditiousness.'" *Id.* (quoting *Morris*, 461 U.S. at 11–12) (additional internal quotation marks omitted).

[13] Brailey fails to direct the Court to evidence suggesting that he had made any efforts to retain new counsel to represent him.

14

the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689).  The second component of *Strickland*, the prejudice component, requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

## A.   Claim C

In Claim C, Brailey faults counsel for "fail[ing] to object to fabricated evidence-to file a motion-present exculpatory evidence (Federal Tax Returns)." (§ 2254 Pet. PageID# 49.) Brailey fails to identify the allegedly fabricated evidence in his § 2254 Petition.  Instead, he argues that the individual Taxpayers, rather than he, bear the responsibility for ensuring the accuracy of the information contained on their returns.  (*Id.*)  Brailey cannot demonstrate any prejudice flowing from counsel's failure to press this point more forcefully, for as the Court of Appeals of Virginia observed, "The fact that the individuals may have known their returns were false does not exculpate [Brailey] under Code § 58.1–348.1." *Brailey v. Commonwealth*, 686 S.E.2d 546, 553–54 (Va. Ct. App. 2009).  Accordingly, this aspect of Claim C will be dismissed.

Brailey also faults counsel for not introducing the Taxpayers' federal tax returns.[14] Brailey, however, fails to demonstrate, as he must, how the Taxpayers' federal tax returns would have diminished the abundant evidence that he assisted them in filing false state tax returns. *See Bassette v. Thompson*, 915 F.2d 932, 941 (4th Cir. 1990). Moreover, the record suggests Brailey also fabricated information in preparing the federal returns. Because Brailey fails to demonstrate prejudice, Claim C will be dismissed.

**B.     Claim D**

In Claim D, Brailey complains that counsel failed to call Bernell Williams Jones and Betty Archer. Brailey asserts:

> These specialist[s] would have testified that in order to file a fraudulent state tax return you must first file a fraudulent federal tax return; and how the tax preparer goes about obtaining information to prepare a tax return. (See sworn affidavit of Bernell Williams Jones)[.[15]] This testimony would have been valuable to the defense.     It would have rebutted a prosecutions [sic] already weak case . . . [counsel] unilaterally did not call either of these experts; nor did he consult petitioner preparing any manners [sic] of trial strategy, counsel clearly exceeds the deficient performance prong.  Prejudice- Had the Jury been made aware of these complex tax laws that could have only been explained by an expert tax specialist. There is a reasonable expectation that the results of the proceedings would have been different.

---

[14] Brailey also complains that counsel failed to introduce the tax returns of the Taxpayers that did not contain Brailey's signature.  The prosecution introduced these tax returns.  No dispute existed that Brailey's signature failed to appear on the tax returns.  Therefore, Brailey fails to identify any deficiency on the part of counsel.

[15] Brailey failed to attach a copy of Jones's affidavit to his § 2254 Petition.  Although Brailey attached a document purportedly from Jones to his state habeas petition (Mem. Supp. Mot. Dismiss Ex. F 34–35 (as paginated by the Court's CM/ECF docketing system)), that document bears no signature and thus carries no evidentiary weight.  In any event, Brailey fails to direct the Court to a provision of Virginia law that supports his assertion that one must first file a fraudulent federal tax return to be guilty of a violation of section 58.1–348.1 of the Virginia Code.

(§ 2254 Pet. PageID# 50.)  Once again, Brailey fails to tender an adequate proffer of the allegedly omitted evidence.  The United States Court of Appeals for the Fourth Circuit has held that "conclusory allegations [of this sort] are insufficient to establish the requisite prejudice under *Strickland*." *United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004).  Moreover, the evidence overwhelmingly demonstrates that Brailey assisted the Taxpayers in filing false state returns in violation of section 58.1–348.1 of the Virginia Code.  Accordingly, Claim D will be dismissed because Brailey fails to demonstrate prejudice.

## VI. CONCLUSION

The Corrected Motion to Dismiss (ECF No. 11) will be GRANTED.  Brailey's Motion for a Hearing (ECF No. 14) will be DENIED.  The petition for a writ of habeas corpus will be DENIED.  The action will be DISMISSED.  A certificate of appealability will be denied.[16]

An appropriate Order shall accompany this Memorandum Opinion.

/s/
John A. Gibney, Jr.
United States District Judge

Date: 3/18/13
Richmond, Virginia

---

[16] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1)(A).  A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Brailey fails to satisfy this standard.

17